B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT    DISTRICT OF NEVADA | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>**SHAWN SNYDER AND JENNY SNYDER** | Case Number: **BK-S-08-18956-LBR**<br>**Chapter 13** |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>**COUNTRYWIDE HOME LOANS, INC.** | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>**Jeremy T. Bergstrom, Esq., Attorney Bar No. 6904**<br>**MILES, BAUER, BERGSTROM & WINTERS, LLP**<br>**2200 Paseo Verde Pkwy., Suite 250**<br>**Henderson, NV  89052**<br>**Telephone number: (702) 369-5960** | **Court Claim Number:** _____<br>                    *(if known)*<br><br>Filed on: _____ |
| Name and address where payment should be sent (if different from above):<br>**COUNTRYWIDE HOME LOANS, INC.**<br>**P.O. Box 10219**<br>**Van Nuys, CA  91410-0219**<br><br>Telephone number: | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1. Amount of Claim as of Date Case Filed:     $  455,359.60<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒  Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or charges. | 5.    **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).  If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐  Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). |
| 2. Basis for Claim:  _____Money loaned_____<br>(See instruction #2 on reverse side.) | ☐  Wages, salaries, or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| 3. Last four digits of any number by which creditor identifies debtor:   **CWL 2281 /  MBBW File No.: 08-93377**<br><br>   3a.  Debtor may have scheduled account as: _____<br>        (See instruction #3a on reverse side.) | |
| 4. **Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:**  ☒ Real Estate   ☐ Motor Vehicle   ☐ Other<br>**Describe:**<br><br>Value of Property:$ _not determined_     Annual Interest Rate _____%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $ 7,125.35_____     Basis for perfection:  _Deed of Trust/Mortgage_____<br><br>Amount of Secured Claim:  $ 455,359.60_____     Amount Unsecured: $_____ | ☐  Contributions to an employee benefit plan – 11 U.S.C. §507(a)(5)<br><br>☐  Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐  Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).<br><br>☐  Other – Specify applicable paragraph of 11 U.S.C. §507(a)(___). |
| 6. **Credits:**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority:**<br><br>$_____ |
| 7. **Documents:**  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary.  Attach redacted copies of documents providing evidence of perfection of a security interest.  You may also attach a summary.  (See definition of "redacted" on reverse side.)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACH DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| Date:<br>9/16/2008 | Signature: The person filing this claim must sign it.  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above.  Attach copy of power of attorney, if any.<br><br>    /s/ Jeremy T. Bergstrom, Esq.<br><br>**Jeremy T. Bergstrom, Esq., Attorney for Claimant / Attorney Bar No. 6904**<br>**Miles, Bauer, Bergstrom & Winters, LLP**<br>**2200 Paseo Verde Pkwy., Suite 250, Henderson, NV  89052**<br>**(702) 369-5960 / FAX (702) 369-4955 / File No.  08-93377** | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

Claim as of August 11, 2008:

| Unpaid Principal Balance | = | $448,234.25 |
|---|---|---|

Reinstatement

| 3 monthly principal and interest payments at $2,557.73 each (June 1, 2008 through August 11, 2008) | = | $7,673.19 |
|---|---|---|
| Property Inspection | = | $30.00 |
| Escrow Shortage | = | $137.33 |
| Post-Petition, Pre-Confirmation Bankruptcy Attorney's Fees and Costs* | = | $250.00 |
| Less Suspense | = | -$965.17 |
| **TOTAL REINSTATEMENT** | = | **$7,125.35** |
| **TOTAL UNPAID PRINCIPAL PLUS REINSTATEMENT** | = | **$455,359.60** |

*Fee Expenses incurred post-petition relating to Protecting Lender's Interest in the Property, the Lien, and Rights Under the Deed of Trust, including, but not limited to, Preparing and Filing the Proof of Claim, Review of chapter 13 plan and relevant loan documents to ensure proper plan treatment and analyze plan to determine whether objection will be necessary.

If Legal Fees and Costs are incurred after this Proof of Claim is filed, your account will be assessed those fees and costs if legally permissible in the opinion of the lender. If such fees and costs are not paid as part of this case, they may be collected in the future pursuant to the terms of your security instrument, the Bankruptcy Code, and other applicable law.

*Trustee payments should be sent to:*
**COUNTRYWIDE HOME LOANS, INC.**
**P.O. Box 10219**
**Van Nuys, CA  91410-0219**
**Last Four Digits of Account Number 2281**

08-93377/poc.dot/kw

**EXHIBIT "1"**



THIS IS CERTIFIED TO BE A
TRUE AND CORRECT COPY
OF THE ORIGINAL.
Equity Title LLC
By _____

Prepared by: JAIME MORALES

LOAN #: 119852281

# INTEREST ONLY ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

OCTOBER 13, 2005                          LAS VEGAS                          NEVADA
[Date]                                    [City]                             [State]

3935 QUADREL, LAS VEGAS, NV 89101
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 440,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.000 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will make a payment on the  first         day of every month, beginning on  DECEMBER 01, 2005     .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on  NOVEMBER 01, 2035    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.
### (B) Amount of My Initial Monthly Payments
My monthly payment will be in the amount of U.S. $2,566.67        before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.
### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the  first         day of NOVEMBER, 2008     , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

NEVADA INTEREST ONLY ADJUSTABLE RATE NOTE - LIBOR INDEX
● BC - Interest Only  ARM Note
2E079-NV (02/04)(d)                          Page 1 of 3                          Initials: _____




LOAN #: 119852281

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE & ONE-HALF percentage point(s) ( 5.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.500 % or less than 7.000 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 14.000 % or less than 7.000 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full Prepayment or a Partial Prepayment without paying any penalty. If I make a Partial Prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial Prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a Full or a Partial Prepayment at any time. However,

☐ I may prepay this Note in full at any time without penalty.

☒ If within the first THIRTY SIX months after the execution of the Note, I make any prepayment(s) within any 12-month period, the total of which exceeds 20 percent (20%) of the original principal amount of this loan, I will pay a prepayment penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds 20 percent (20%) of the original principal amount of the loan.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.



LOAN #: 119852281

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
SHAWN SNYDER                                    -Borrower

_____ (Seal)
JENNY SNYDER                                    -Borrower

_____ (Seal)
                                                -Borrower

_____ (Seal)
                                                -Borrower

*[Sign Original Only]*

Assessor's Parcel Number:
138-09-501-013
After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
JAIME MORALES
Recording Requested By:
H. CHAKRABORTY

THIS IS CERTIFIED TO BE A
TRUE AND CORRECT COPY
OF THE ORIGINAL.
Equity Title LLC.
By

COUNTRYWIDE HOME LOANS, INC.


8075 S RIVER PARKWAY
TEMPE
AZ 85284

————————————[Space Above This Line For Recording Data]————————————

05600086                00011985228110005
[Escrow/Closing #]           [Doc ID #]

# DEED OF TRUST
MIN 1000157-0005737064-1


DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.
(A) "Security Instrument" means this document, which is dated  OCTOBER 13, 2005               ,
together with all Riders to this document.

NEVADA-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16                                Initials:

VMP -6A(NV) (0307) CHL (07/03)(d)
VMP Mortgage Solutions - (800)521-7291                              Form 3029 1/01





DOC ID #: 0001198528110005

**(B) "Borrower"** is
SHAWN SNYDER, AND JENNY SNYDER, HUSBAND AND WIFE AS JOINT
TENANTS

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.

Lender is a
CORPORATION

organized and existing under the laws of  NEW YORK                              . Lender's address is
4500 Park Granada
Calabasas, CA 91302-1613
**(D) "Trustee"** is
ReconTrust Company, N.A

225 West Hillcrest Dr., MSN TO-02
Thousand Oaks, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated   OCTOBER 13, 2005              .
The Note states that Borrower owes Lender
FOUR HUNDRED FORTY THOUSAND and 00/100

Dollars (U.S. $ 440,000.00          ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than   NOVEMBER 01, 2035          .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

Initials: _____

DOC ID #: 0001198522811005

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

Initials: _____

DOC ID #: 0001985228110005

irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property
located in the  COUNTY                                                                                              of
[Type of Recording Jurisdiction]

CLARK                                                                                :
[Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of
3935 QUADREL, LAS VEGAS
[Street/City]

Nevada    89129       ("Property Address"):
[Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also
be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by
Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for
Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,
but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender
including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.

Initials:

@ -6A(NV) (0307)   CHL (07/03)        Page 4 of 16            Form 3029  1/01

10/26/2005 10:55 FAX    Received 10/ /2005 11:53AM in 11:20 on line [30] for AC  H01_A * Pg 7/25    ☑007/025

DOC ID #: 00011985228110005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____(Seal)
SHAWN SNYDER                                                    -Borrower

_____(Seal)
JENNY SNYDER                                                    -Borrower

_____(Seal)
                                                               -Borrower

_____(Seal)
                                                               -Borrower

-6A(NV) (0307)    CHL (07/03)    Page 15 of 16    Form 3029  1/01

Received 10  2005 11:53AM in 11:20 on line [30] for AC  01_A * Pg 6/25

10/26/2005 10:54 FAX ☑006/025

DOC ID #: 00011985228110005

**STATE OF NEVADA**
**COUNTY OF** Clark

This instrument was acknowledged before me on 10/20/05 _____ by


Shawn Snyder and Jenny Snyder.

KRISTEN BERTUCCINI
NOTARY PUBLIC
STATE OF NEVADA
APPT. No. 04-87578-1
MY APPT. EXPIRES JULY 7, 2007

Mail Tax Statements To:
TAX DEPARTMENT SV3-24

450 American Street
Simi Valley CA, 93065

Initials:

VMP®-6A(NV) (0307)     CHL (07/03)        Page 16 of 16        Form 3029  1/01

# EXHIBIT "A"

That portion of the Northeast Quarter (NE ¼) of the Northeast Quarter (NE ¼) of Section 9, Township 20 South, Range 60 East, M.D.B.&M., described as follows:

Lot One (1) as shown by map thereof in File 67 of Parcel Maps, Page 2 in the Office of the County Recorder of Clark County, Nevada, and recorded November 6, 1990 in Book 901106 as Document No. 00579, Official Records.

1

## **PROOF OF SERVICE**

2       I,  Kay Wallace           , certify that I am a resident of Clark County, I am over

3  the age of eighteen (18) and not a party to the within action, and that my business address is:

4  2200 Paseo Verde Pkwy., Suite 250, Henderson, NV  89052.

5       On  September 16, 2008   , I served the within **Proof of Claim** on interested

6  parties in this proceeding by placing a true and correct copy thereof enclosed in a sealed

7  envelope with postage pre-paid in the United States Mail at Henderson, NV, addressed as

8  follows:

9  ATTORNEY FOR DEBTOR:                        CHAPTER 13 TRUSTEE:
   George Haines                               Rick A. Yarnall
10 1020 Garces Ave., Ste 100                    701 Bridger Ave., #820
   Las Vegas, NV 89101                          Las Vegas, NV  89101

11

12      I declare that I am employed in the Office of a Member of the Bar at whose direction

13 the Service was made.

14      I certify under penalty of perjury that the foregoing is true and correct.

15      Executed on   September 16, 2008       , at Henderson, NV.

16                                              /s/ Kay Wallace

17 08-93377

18

19

20

21

22

23

24